On behalf of the Appalachians, Ms. Jennifer Turiello. Mr. Petty. I didn't want to be petty about it, but I'm glad you mentioned it. I'm sure you've never heard that one before, sir. One would think it might be Ms. Turiello who really needs to visit. Good morning, Your Honors. Good morning. You may proceed. I wish to point out to the Court that we have a very interesting novel issue in this case. The defense characterized this as a run-of-the-mill issue covered by the Illinois Snow and Ice Renewal Act. And it's buttoned down with one case, the Devis case from the First District. And nothing could be further from the truth. Nothing is more irrelevant. And I'm going to point that out to the Court to assist you. You think Devis is distinguishable, then? Oh, it's... Or do you think it's wrong? It's clearly distinguishable. It stands for very little and is not relevant to the main issues of the case. This case involves a slip and fall upon a common walkway. The maintenance for which was within the control and responsibility of the defendant, Chesapeake Commons Homeowners Association, a condominium with recorded declarations. At the time of the incident, the plaintiff, Christina Stanley, a young lady in her early 20s, was residing with her family and in-laws who were condo unit owners within the condominium. The defense is that the Illinois Snow and Ice Removal Act gives absolute immunity to the Chesapeake Commons snow and ice removal activities. And there was no evidence of willful and wanton conduct. Ergo, the summary judgment of the trial court was properly entered. After a hearing upon reconsideration, the trial court's original opinion was, if I may politely say, hashed, mishmashed, and disposed of. And then the court, the trial court, leaped to the conclusion that there was no contractual obligation undertaken by the condominium association, despite their recorded declarations, and that there was no genuine issue of material fact with respect to willful and wanton conduct, implicitly suggesting that the Snow and Ice Removal Act applied. What was the willful and wanton conduct? Or what is your intention? I can elaborate on that, if you would like. Well, I'd like to know. Obviously, the parties testified that they had walked over the swamp during the day. There was some ice that they had observed, but it had maybe gotten warmer in the sun, and the sun went down, and it might have been frozen. So what's the willful and wanton conduct? Assuming that the act would apply and that the standard is willful and wanton, we believe that there is a genuine issue of material fact on that. It's based on the fact that the condominium association, through its management, and its president and the office manager, demonstrated a careless and indifferent conduct with regard to ice removal. And this is the reason why it gives rise to a genuine issue of material fact. And I have at least six grounds for this. The first is that Chesapeake Commons made no provision for ice removal with their subcontractor who was engaged to remove snow. So ice removal was omitted. I thought they could use ice pellets or something, sand, whatever, with the permission of either some management person or the president. The aggregate is the subcontractor who was a third-party defendant and is out of the case now on a summary judgment motion as well. But they did scatter some ice solvent and salt when they did plow snow. So the problem is, when they didn't plow snow, no one did a damn thing. Nothing. Which brings me to my second point. Chesapeake Commons managers never inspected the common area sidewalks, and that's their testimony in the record. Never even checked. Thirdly, Chesapeake Commons managers never inspected Akron Edge's work. Their subcontractor. And they admitted this. So it's willful and wanton if you rely on your landscaper to remove the snow completely? It's willful and wanton if the snow removal company is not there, ice is forming on the walks, and no one is doing anything, and it's indifferent and calloused and willful and wanton. It doesn't have to be scienter. We're not talking criminal law here. I know, but the issue is whether or not there's anything to show that the complaint alleges or anything in the summary judgment motion to show that the people who were on site there knew or should have known that there was this ice formation on the sidewalk. Yes. The answer to that, Warner, is that the Akron Edge used ATVMs, they're like automated equipment with a snow plow, to do the sidewalks. And they ran down the sidewalks and built up snow walls on each side. And they were present. Just like in the Villa Park case, if I may refer to that, it's Russell versus the village of Lake Villa, where the court found that the plow company that was pushing snow piles up that led to melting, refreezing, and the connection between creating an unnatural accumulation of snow, which is our contention here, there was unnatural accumulation of snow, and the formation of ice, and the two were connected. And they had notice, because it was their own employees that did it. And here, it is our position that the homeowners association has to be charged with notice because it was their people that were out there doing it, even though they were indifferent about bothering to inspect their own contractor's work. I would like to ask a question. Sure. It is inferred, or implicit, but not necessarily assured, that if it's a natural accumulation, would you agree that there cannot be any willful or wanton conduct? If there's a natural accumulation, I think the common law, there's two issues. There's no liability under common law if it's a natural accumulation. And if there's no liability, then it would seem that negligence obviously doesn't apply, nor does willful or wanton. So the viability of your contention is based on two aspects. First, it's an unnatural accumulation, and it's willful and wanton insofar as dealing with this unnatural accumulation. Yeah, there's some other issues here. But just focusing on this willful and wanton concept, the common law is if it's natural accumulation, there is no liability. Under the Stone Ice Removal Act, the Act only finds liability where there's willful and wanton conduct, but for a very good reason, and I have to emphasize what that reason is. The reason is that the public policy, it's an interesting statute where it expressly states what the public policy is. The public policy is to encourage people who have no duty to remove snow. I'm addressing your question, Your Honor. If it's natural accumulation, there is no duty to remove the snow. But to encourage them to go out and remove that snow, an immunity is created, and the standard of care now must be willful and wanton conduct rather than ordinary negligence. So the public policy is applicable to encourage people that have no duty to remove snow. In this case, there were declarations with very definitive duties defined. These were contractual obligations that the Homeowners Association had and for which they were receiving valuable consideration. They were collecting money to do this work. Before we get too far away from this unnatural accumulation issue, I'm trying to have an understanding of what difference does it make? Because when we talk about Russell, Russell was not a Snow Ice Removal Act case. What we're talking about here is when people go out and shovel their walks, they are going to create an unnatural accumulation. They're going to push the snow to the side, and whether it's natural or unnatural is really of no consequence because they're immune from moving the snow off the sidewalk. Now, the issue is this melting and refreezing. Whether that comes from a natural accumulation or an unnatural accumulation doesn't appear to be of any import to me. It's whether the people knew or should have known that it was there to create the willful and wanton aspect of the claim, if the Act applies. So my question is, what difference does it make whether it's an unnatural or natural accumulation under the Act? If we ignore the declarations and the contractual duties and the number of cases here in Illinois that have held, that when you incur a contractual obligation, the standard of care is established. And that changes the landscape here significantly. However, addressing your question specifically, Your Honor, if there is an unnatural condition created, and I use Russell as an example of that because it would involve a walkway and a slip and fall and so on. If an unnatural accumulation is created and that condition gives rise to a dangerous condition, then I believe that that is not within the ambit of the Snow and Ice Removal Act. Because the Snow and Ice Removal Act does not address snow storage. And that's what is so critical here. There was an undertaking in the declarations to store snow. That was a covenant. And what we're arguing on that issue is, if that covenant had been properly executed, we wouldn't be here today. There would be no injury. But there was snow storage. There was clear evidence in the record that the snow had melted and become crusty. There was over up to one and a half to two feet lining the sidewalk. And there was just sufficient evidence to raise a genuine issue of material fact that there was melting and refreezing coming from improper snow storage. And that in itself is a basis to reverse the lower court. Because the lower court never addressed it. They ignored the whole issue of snow storage and the covenants of the declarations. Where does your complaint allege improper snow storage? Our complaint does not explicitly use the word snow storage, but it does allege breach of a contractual duty. It's count one states that there was a duty established by contract and it was negligently performed. And certainly the improper snow storage would be within that. Certainly we'd be entitled to leave to amend our complaint to clarify that. But we have sufficient factual evidence from our depositions and so on to support a genuine issue of material fact. And that seems to be a quintessential issue for the jury and not subject to a summary judgment. And what exactly does the covenant say or the condominium agreement say about snow? What is Chesapeake's responsibility? Yes. I wanted to mention, I didn't finish my list of 86 points on willful and wanton conduct. There's another thing here that Acrid Edge did not permit the snow removal company. I'm sorry. The condominium association did not permit Acrid Edge and the snow removal company to do any salting unless they got permission from the president of the Chesapeake Commons in advance. That to me is indifference. Chesapeake Commons declined to get involved in ice removal. They took the position that the residents should do it on their own. And if you've got ice problems, go fix it yourself. We've got a bucket of ice down at the clubhouse. We have a bucket of salt, excuse me, ice removal. Go scan your own salt. The salt your own policy was a direct odds with the association's duties under the declarations because the declarations require that they remove the snow and that they properly store the snow. And now I would like to address and your honor, this is directly responsive to your question. What I believe to be the principal issue involved in the case. Defendant Chesapeake Commons had adopted condominium declarations that committed it to specific contractual obligations. And those decks were recorded 10 years after the adoption of the Snow and Ice Removal Act. And in preparation of those declarations, clearly it's drafted and had an opportunity to address immunities related to that act, but they ignored that. And what they did is they created an insurance contract. In section 4.11 of the declarations, it provides all areas of the facility to publish the common areas, including driveways, parking areas, pedestrian walks, shall be maintained by the association in such a manner as to ensure the proper use and function of such area as facilities as originally designated and or constructed. This is a warranty of fitness for purpose. The words actually used was they ensured that the walkways would be fit for their intended purpose. Is this the reason why Divis is distinguishable? I believe yes, because in Divis, the appellate court did not mention the word declarations once in the entire decision. Not once did the court address the issue of what the covenants or the contractual obligations. And this is something I think the appellate court could have been confused about. The covenant we're talking about is the homeowners covenant owing to the unit owners. Which again makes moot the Snow and Ice Removal Act because the Snow and Ice Removal Act has nothing to do with that. This is a covenant from the homeowners association to the unit owners and the person standing instead including their families and residents of the unit. And the covenant is that the walkways would be fit for their intended purpose. And to have this long list of the six or seven items I pointed out, showing calisthenic difference to the maintenance of those walkways when there wasn't snow that was two inches or more, is certainly the nature of negligence if not real form of lying conduct. I'm sure your time was up about five or ten minutes ago. Yeah. So you'll have a chance to make rebuttal. Thank you. Thank you very much. Ms. Turriello. Good morning, your honors. Good morning. My name is Jennifer Turriello representing the Defendant Appellee Chesapeake Homeowners Association. There were several questions asked of my opposing counsel that I didn't hear answers to, and I want to make sure that those questions get answered that you ask. Justice Hutchinson, you had asked about the evidence on the record of willful and wanton misconduct. And the point here is that there is no evidence of willful and wanton misconduct. The court has noted this morning that willful and wanton misconduct, that analysis involves the concept of knowledge of a hazardous condition, knowledge that people have been injured by that condition and doing nothing about it, a conscious disregard for safety. In this case, the testimony of record is that Accurate Edge was out on the property the day before this accident and salted the sidewalks the day before this accident they were out there. That's not willful and wanton. Try as the plaintiff might, this is not a willful and wanton case. There is a decision from this court, the Kurzak case, it's cited in our brief, kind of as a comparative case where the court found there was no willful and wanton violation in that case either. And as the court might recall, in that case, there was a fall that occurred on a paved walkway between a driveway and a porch. And the allegations were that there was water dripping from a roof overhang onto the walkway that then froze. And the plaintiff came walking along the walkway, slipped and fell, and alleged that based upon the fact that another person had fallen on that walkway a week before his accident, it was a nephew, it was the defendant's nephew, that there was evidence of willful and wanton misconduct. And in that case, the court found no, no. There had been salt applied to the walkway the day before that accident. The nephew had applied salt to the walkway after he fell on it, and there was insufficient evidence of knowledge on the part of the defendant in that case to support that there was willful and wanton misconduct. What about this provision that, as I read it, I was interested, that they couldn't use certain salt or certain ice removal without the permission of the president? We need to clarify some myths about what the evidence is in the record. There's a lot of liberty being taken with some of the testimony in this case, I would argue, by the plaintiff. The testimony is that Accurate Edge had the ability to apply de-ice or substance or salt to the sidewalks in conjunction with its regular snow plowing activities. That took place, so if more than two inches of snow fell and Accurate Edge was out there plowing, they could apply salt without asking anybody to do it. That's the testimony of record. If there wasn't two inches of snow on the ground and Accurate Edge was not out at the property snow plowing, but salt needed to be applied, the board president could ask Accurate Edge to come to the property and apply salt to the sidewalks. That was allowable under this contract. So the notion that the contract didn't provide for de-icing or salting of sidewalks is absolutely false, and it's contradictory to the testimony of record and to the contract provisions. And it's also clear that this ice that the plaintiff fell on was not the result of an ice storm, which we've had recently. It was the result of a snowstorm, correct? That's correct. The testimony of record is that between February 1st and February 6th, approximately 18 inches of snow fell. There's some contradiction in the record about if there was any snowfall on the date of the plaintiff's accident. Chad Clark is who I would point the court to for this testimony. There were documents shown to Mr. Clark during his deposition that supported that there was only a trace of snow that fell that day. There were other documents that suggested 1.5 inches of snow fell on the date of the accident. Without putting words in Mr. Petty's mouth, he seems to be arguing that the covenant creates a duty that your client would ensure that the walkways would be clear. And since there is this insurance with an E, that the failure to inspect could be deemed to be willful and wanton conduct because there is a heightened duty when one says, I will make sure that the walkways remain free and clear, that in order to effectuate that, you have to make periodic inspections. Otherwise, ignorance is bliss. So what is your response to that? My answer to that is that Accurate Edge inspected its work. That was the testimony of Chad Clark. He was the vice president of Accurate Edge. He was out at the property in a supervisory capacity. He would, if need be, pitch in and help on a heavy snowfall. But he inspected Accurate Edge's work. There's nothing in the condominium declaration, in addition, that says anything about that we're going to inspect the snow removal contractor's work. I mean, we had this duty under the contract, and we contracted that snow removal work out to a company that said they'd do it and did it. I think the language of 4.11 of the declaration says that all areas and facilities upon the common areas, including pedestrian walks, shall be maintained by the association in such a manner as to ensure ENSURE, the proper use and functioning of those areas. What does that mean? In a walkway, I would think it means you could walk on it and not fall or not trip. If it's not your fault. I mean, if you're not carrying a package and you don't see something. The way we ensured that here was that we had a snow and ice removal contractor on the property. They were there the day before this accident, and they put ice down on the sidewalk. They put ice melters. Correct. I apologize, misspoke. I do want to address, as well, with the limited time I have, the Divis case. It is relevant. It is absolutely relevant to the analysis in as much as plaintiff is arguing that because of this contractual obligation, this ensuring agreement, they call it many things, maintenance guarantee in their brief, that somehow the existence of this declaration takes the case out of the rubric of the act. And in Divis, a similar argument was made that parties who enter into contracts to remove snow and ice don't enjoy immunity under the act. That was the plaintiff's argument in that case, and the court rejected it. It was the first district in 2008. You know, yes, the declarations weren't specifically discussed in Divis, but the Condo Association was a defendant alongside the snow removal contractor in that case. So the implication is that there was something there obligating that, you know, that caused that contract to come into existence. But, again, the first district appellate court cited the public policy behind the act, which I think Mr. Petty also misconstrues a bit today, saying that the public policy is to encourage people who have no duty to remove snow to do so. The statute doesn't say that. That's not what it says at all. So I want to make sure that the court is clear about that. We do believe Divis is relevant, and it's dispositive of this argument that, you know, somehow the existence of the condo declaration takes the case out of the act's rubric. There are a couple of other arguments for why the plaintiff says that the snow and ice removal immunity does not apply. I want to make sure I hit on those very quickly. We heard a plaintiff claim that her cause of action is about improper snow storage. And, Justice Burke, you asked, where in the complaint were there any allegations of improper snow storage? And, again, the answer to that question is nowhere. If you look at the complaint in Count 1, I'm going to go through it. There are several paragraphs. Paragraph 17, the association was required to properly remove snow and ice. Paragraph 20, the association had snow removal activities initiated, but such activities were left unfinished and incomplete. And the list goes on and on of the paragraphs where the words snow removal or incomplete snow and ice removal are all within this complaint. And, as such, the trial court properly construed this claim as a claim for improper snow and ice removal. Now, a plaintiff raises the point that they could amend their complaint, but they never sought to do so in front of the trial court. So that gets us nowhere. What about this unnatural accumulation issue? I mean, it seems like I'm struggling with how it applies in relation to the act. The cases that talk about unnatural accumulation are things that happen on public property and on driveways and things that are not sidewalks and have not been determined to be sidewalks under the Snow and Ice Removal Act. So where does unnatural accumulation play into this in your mind? I did want to get to your question about that. You would ask, what difference does it make if it is an unnatural or natural accumulation of snow or ice under the act? And my response would be it doesn't make a difference because we're talking about two different concepts that are being confused and blurred by the plaintiff. Natural accumulation rule goes to duty. It goes to the duty element of a negligence claim, assuming the act doesn't apply and negligence is the standard. But if the act applies, we're talking about Wolf 1-1. We're talking about immunity, which is something separate and apart from duty. The two concepts are not the same, and that was also discussed in Divis. There's a nice discussion of that in Divis and the confusion of those issues by the plaintiff in that case. We've pitched this to the court as that there are two independent bases upon which summary judgment ruling by the trial court could be affirmed, and they are not at all dependent upon one another. One is the Snow and Ice Removal Act and that we're entitled to immunity under it, and the second is the natural accumulation rule. I have not addressed the natural accumulation rule yet, but want to do so briefly with the court this morning. Again, absent a contractual obligation, we have no obligation to remove natural accumulations of ice and snow. Now, here the declaration speaks about snow removal. It says nothing about ice removal. That's not in the declarations. So we have a scenario where Chesapeake voluntarily undertook to remove ice per its contract with accurate edge. But even in the voluntary undertaking scenario, the plaintiff has to establish that the fall was on... The declaration ensures that the common areas will be maintained so they can properly be used. I mean, that would apply to ice removal, wouldn't it? If it does, the argument still is the same, that there is... The plaintiff still has an obligation to show that what she fell on was an unnatural accumulation of ice, and the theory that the plaintiff has taken here is that the ice, the snow mounds, would melt, there would be water runoff, the water would then freeze, causing the patch of ice. Well, under Illinois law, there has to be a nexus established between the snow mound and the ice patch. And the plaintiff cited very briefly the Russell case. That case is distinguishable. This case is not Russell. There were a lot of differences in the evidence in Russell versus this case. In Russell, there were pictures the court might recall from the day after the accident of the ice mound... Or the snow mound, I'm sorry, and the ice patch. There was testimony in the record that the ice patch formed an apron at the base of the snow mound, and there were several witnesses who came forward to say that it appeared that the ice patch in that case, on which the plaintiff fell, was caused by water runoff from the nearby snow mound. We don't have any of that in this case. We don't have... Here, the plaintiff doesn't know what caused the ice patch to form. That's her testimony. We don't have pictures of this ice patch. We don't have meteorological data to support... There is testimony in the record that the day before the accident, this is Chad Clark's testimony, that the temperature got up to 37 degrees, and that would be sufficient to thaw a snow mound. But there's no testimony in the record or meteorological data to show what the temperature did overnight right before a plaintiff's accident. We don't have that. We don't know that. So it's speculation to say that this ice patch came from a melting snow mound. It's not there. That testimony is just not there. So that's where we're left with, again, two independent arguments that support affirming the trial court summary judgment ruling in my client's favor. First, the immunity under the Snow and Ice Removal Act, and then the natural accumulation rule, which would negate the notion that we owe any duty to the plaintiff in relation to this ice patch. I do want to mention briefly as well, there are two motions pending in front of the court that were taken with the case. And I believe those motions are a spawn, if you will, of plaintiff recognizing that she doesn't have the evidence in this record to show that what she fell on was a natural accumulation of ice. What she fell on was not? I'm sorry. I misspoke again, and I apologize. A natural accumulation of ice. In the appellant's reply brief, if I may just briefly finish this point. Yes. In the appellant's reply brief, there's testimony of two witnesses. It's not contained in the record on appeal. I move to strike that portion of the appellant's reply brief, and I'd ask the court to do that and disregard it. The plaintiff also filed a motion to supplement the record on appeal after my appealee's brief was filed. That, too, is improper, and I would ask the court also to deny that motion. For all the reasons we've discussed, I ask the court to affirm the trial court summary judgment ruling. Thank you. Thank you. Mr. Petty. Unfortunately, there was a clerical error in the wrong page. I don't remember the exact number, but it was instead of 40, it was 42 or something like that. So we got the wrong page put in the motion, but the point was made. It was argued. And so we filed a motion to supplement the record after counsel attacked us for not having the right page. We would ask the court to consider the discriminatory error as something which is really superfluous and defeats getting at the truth of what occurred here. The record is pretty good in the absence of what we're asking to be supplemented. The testimony of Christina is that there was ice on the common walkway where she fell. There's testimony of snow plowing and building up one and a half to two feet snow banks. That's all uncontested. There's, as counsel just pointed out, the supervisor for the snow removal company, Mr. Clark, testified and actually submitted a written document with his handwriting during the deposition, which is all part of the record, to the effect that there had been a buildup of snow several days prior and that there was a warm temperature, I don't remember the exact degrees, but it was certainly above freezing. And it melted and that this is extremely probative of why the ice was on the sidewalk. It was a meltdown from an artificial snow pile that was created by the defendant and the defendant's agent. Whether it's a natural or unnatural accumulation really has to do with the issue of duty, does it not? Duty to remove or duty to guard against? I think so. Then why does it make a difference again? I've already talked about why does it make a difference under the Act. Let's talk about if the Act does not apply as you argue. Why does it make a difference? Because your argument is that there's a duty created by the contract, separate, apart from unnatural, natural. No matter what, no matter what's on that sidewalk, there's a duty created by the contract to get rid of it, correct? That's right. Well, then what difference does it make whether it's natural or unnatural under either argument? Yeah, yeah. I believe that if you have a contractual duty to remove natural snowfall, that there's a standard of care established under negligence law by breaching that duty. And that's why I think the covenants and that insurance language is so critical. Secondly, in the absence of a covenant, I believe Illinois law is clear that if you create an artificial hazard by building snow piles that are unnatural and those melt and form ice, that there's liability. There's a number of cases ranging from parking lots to sidewalks. But parking lots aren't sidewalks, counsel. There's a case, Gallagher, I think, that talks about the distinction between driveways and sidewalks. Yes, yes. And there's been a lot of litigation over, you know, what's a walkway, what's a driveway, and so on. But what's been consistent is that where there's a snow storage, where you go in and change the natural accumulation, you create big snow piles, and then as those snow piles start melting, and that's creating new hazards, that liability arises, common law liability arises from that. And so we have a number of issues here as to why this case should be sent back. Summary judgment should never have been granted because, A, there were covenants and obligations undertaken by the Homeowners Association which supersede the Snow and Ice Removal Act. Secondly, there's a creation. Excuse me, counsel. They superseded because why? Because it's contained in the declarations. The declarations say, by the way, the Immunity Act doesn't apply as to these declarations. Because the Immunity Act never was intended to exonerate someone who had taken a preexisting duty by covenant. And the express public policy is to encourage people to shovel their sidewalks. And there's no duty to shovel your sidewalk. You don't have to. But not in the case of this condominium association. They had to. They had a covenant to do that. Any other questions? Time is up, sir, if you'd like to close. I thank you very much for your attention. I think that this case is a little more complicated than tossing away with Davis and the Snow and Ice Removal Act. I think there's real substance here and real entry, and we kindly ask you to consider our position. Thank you very much. Thank you. There will be a short recess.